SUPERIOR COURT OF WASHINGTON FOR SKAGIT COUNTY

Garry L. Taylor,

    Plaintiff,

vs.

City of Sedro-Woolley, a municipal corporation,
and Austin McCombs, an individual,
and Chris Rogers, an individual,

    Defendants.

NO. 20 2 00714 29

Complaint for Damages

I. **Parties:**

1. The plaintiff Garry Taylor, a single man, is a resident of Skagit County, Washington, and has resided in Skagit County, Washington during all time periods relevant to this lawsuit.

2. The City of Sedro-Woolley [hereinafter, "the City"], is a municipality located in Skagit County, Washington and has performed the acts herein complained of in Skagit County, Washington, and is the employer of the below named individual police officers who acted or purported to act on behalf of the City as their *respondeat superior* in their normal course of duties for the Sedro-Woolley Police Department.

3. At all times relevant herein, Austin McCombs [hereinafter, "McCombs"] is or was an officer of the Sedro-Woolley Police Department and an employee of the City of Sedro-Woolley and has performed the acts herein complained of in the course of his duties in the City of Sedro-Woolley within Skagit County, Washington.

Complaint – page 1

COPY

DAVID D. LOWELL
ATTORNEY AT LAW
P.O. BOX 1346
BURLINGTON, WA 98233
(360) 755-0111 • FAX (360) 547-6540

4. At all times relevant herein, Chris Rogers [hereinafter, "Rogers"] was an officer of the Sedro-Woolley Police Department and an employee of the City of Sedro-Woolley and has performed the acts herein complained of in the course of his duties in the City of Sedro-Woolley within Skagit County, Washington. Upon information and belief, shortly after the events which are the subject of this complaint, Officer Rogers was no longer employed by the City and was then hired by the Skagit County Sheriff's Department.

## II.  Venue/Jurisdiction

5. This Court has jurisdiction over this action under RCW 2.08.010.

6. Venue over this action is proper in this Court because the Defendants are situated in Skagit County, Washington and/or independently because Defendants have conducted business in Skagit County and, additionally, because the causes of action pleaded herein arise from events in Skagit County, Washington. In addition, on September 3, 2020, a standard tort claim form was served upon the designated agent of the City of Sedro-Woolley in accordance with RCW 4.96.020.

## III.  Facts

5. At the time of the incident, Plaintiff Garry Taylor [hereinafter, "Garry" or "Plaintiff'} as petitioner had filed for an agreed dissolution of a forty three year marriage to Amy Taylor and was still residing with his wife, by her request, to help her with expenses until the finality of the divorce.

Garry is now retired from a very physically demanding career in trucking and logistics. As a result of this work, Garry has had at least five (5) surgeries on his spine, additional shoulder surgeries, and declared physically disabled by the State of Washington Department of Labor & Industries. At the time of the incident, Garry was 63 years old

Complaint – page 2

and noticeably hobbled by his medical problems as shown on the officers' bodycams described below.

6. At the time of the incident, Garry had no criminal record or history of domestic violence.

7. On September 7, 2018, Garry had a blood test appointment scheduled at a medical office. Additionally, Garry had loaned out his truck to his grandson and was alone at home with no transportation until the expected return of his grandson later that day.

8. Unbeknownst to Garry and against the understanding with his wife that had existed since Garry filed the divorce petition on August 14, 2018, Garry's wife sought a restraining order under the dissolution which was ordered that day by the Skagit County Superior Court requiring Garry to leave the family home without any prior knowledge or notice to Garry. The Restraining Order signed on September 7, 2018 was later dropped on September 17, 2018 at the request of Garry's wife, Amy Taylor.

9. Upon information and belief, after Amy Taylor received the restraining order, she took it directly to the Sedro-Woolley Police Department to get assistance with the service of the order directing Garry to suddenly leave the family home. Importantly, the motion and order stated that Garry had no firearms and was not violent. Rogers later reported that he personally discussed service of the order with Amy Taylor at the police station. Importantly, Garry's wife in her motion cited verbal abuse but no physical abuse and specifically noted that Garry's only rifle and ammunition was previously gifted to their son in Oregon.

10. McCombs and Rogers arrived at the family home and approached with their bodycams activated. The footage shows Rogers carrying the papers purporting to be the restraining order and approaching the front door. Just as Rogers arrived at the ramp to the front door, he veers off to the opposite side of the house and decided to enter the curtilage at the back of the home through the back steel gate without notice or warning to Garry.

11. Rogers then calls for Garry through the open door which startles Garry's dogs causing the dogs to bark. Rogers refers to Garry as "Boss" in his first interaction with Garry in the back of his house. Garry steps out on the porch and is visibly surprised and asks why

Complaint – page 3

DAVID D. LOWELL
ATTORNEY AT LAW
P.O. BOX 1346
BURLINGTON, WA 98233
(360) 755-0111 • FAX (360) 547-6549

the officers did not come to the front door. Rogers is heard to claim that he did not know which door was the front door.

12. Due to the loud barking, the officers asked Garry to come out and around the side of the home to hear better. The bodycams indicate Garry was trying to calm the dogs and keep them inside while Garry complied with the instructions to exit the back door and back gate. Due to the dogs' commotion and Garry's difficulty in hearing, the conversation is elevated. Despite Garry's shock, Garry follows the officers' instructions and reenters the family home to gather his things, try to find a ride, and locate a place to stay since Garry did not have his truck nor any notice that he would need to find another place to stay. Neither officer took steps or communicated to Garry that for Garry's safety and their safety that they need to follow common police procedure and escort Garry into the interior of his home. Garry was told twice by both officers that he had ten (10) minutes to gather his belongings.

13. In this entire process, Rogers never clearly explains the restraining order's terms nor is Garry ever served with the order at all. Contrary to the bodycams, Rogers later writes a false declaration and false report that Garry was served with the restraining order at that time. However, Garry never received the restraining order until later that evening after Garry is placed in custody. Also, both officers appeared to be confused on the exact nature of what type of Order it was. The Order signed by Comm. Gwen Holliday on September 7, 2018 was an Immediate Restraining Order (Ex Parte) and Hearing Notice. This was the Order they were suppose to serve on Garry but never did until Garry was at the jail. Each officer later erroneously refers to this Order as a Protective Order, a "DV" Protective Order and a No-Contact Order.

14. The officers are seen to casually walk away from the residence back to their patrol vehicles showing no fear of Garry or the situation.

15. After approximately three minutes, as indicated by the bodycams which also show McCombs starting a timer when Garry entered the home to gather his things, Garry is seen to reemerge by the front door and attempts to tell the officers that he has never

Complaint – page 4

DAVID D. LOWELL
ATTORNEY AT LAW
P.O. BOX 1346
BURLINGTON, WA 98233
(360) 755-0111 • FAX (360) 547-6549

seen the paperwork and is trying to understand why this is happening so quickly. Garry then slowly walks back up the ramp stating that he is going to get his things.

16. Before Garry can even close the small "doggie gate" and get to the front door (which was shut), Officer Rogers is seen to sprint past Officer McCombs, who was casually walking and apparently unconcerned for his safety, Rogers hits Garry at full speed before Garry can even turn around to see what is happening. Rogers yanks Garry over the "doggie gate" and slams Garry's face into the wheelchair ramp.

17. During this time, neither Garry nor McCombs is seen to appear to be in any fear of any confrontation. Garry still has about 6 minutes left to gather his things according to the bodycam footage. Interestingly, Rogers later alleges in his report that Garry got in a "blade stance" which the bodycams clearly shows is not true.

18. Garry is smashed into the concrete porch face-first and is held face down in a prone position as he his handcuffed. Bodycam footage shows Garry's face covered in blood, cuts and abrasions as a direct and proximate result of the officers' actions. Also as a direct and proximate result of the officers' actions, Garry suffered bruises and injuries to his legs including a knee injury that has not resolved and is now scheduled for surgery. The officers eventually call an aid car to treat Garry's cuts and abrasions.

19. After Garry is placed in the back of the patrol vehicle, McCombs falsely states on the bodycam that the officers advised Garry that they would escort him into the residence and that Garry entered the family home and closed the door against orders.

20. Garry also confirms the bodycam footage, stating that he never heard the officers state that they would escort Garry back inside to retrieve his personal belongings.

21. Garry was booked for violation of a no contact order and placed in the Skagit County Jail for two days on the charge before being released on his personal recognizance.

### IV. **First Cause of Action: Assault and Battery**

22. Plaintiff re-alleges as if fully restated all the foregoing allegations.

Complaint – page 5

23. Plaintiff was assaulted by way of the intentional harmful and offensive physical contact without legal right or privilege by defendants Rogers and McCombs. The City, by *respondeat superior,* is also liable because said officers were acting or purporting to act under color of law within the course and scope of their duties for the City.
24. As a direct and proximate result, defendants have caused damages to plaintiff in an amount to be proven at trial.

V. **Second Cause of Action:   Negligence**

25. Plaintiff re-alleges as if fully restated all the foregoing allegations.
26. Plaintiff was owed a "duty of care" by defendants and each of them.  Garry was not a suspect nor were there any warrant or other legal grounds of exigency to execute the service of process through the curtilage of the back gate of the family home which caused the dogs to become startled and aggravated the communications to Garry about the nature of the officers' contact, thereby creating confusion and disturbance to Garry which a reasonable officer in the defendants' positions would have avoided.  Garry was never served with the restraining order papers and followed orders to retrieve his things within 10 minutes.   Both officers did not discharge their duties as a reasonable, objective police officer would have in similar circumstances.   In particular, they were negligent in not escorting Garry into his home to collect his personal belongings.  This lack of duty of care was one of the proximate causes of the wrongful arrest.
27. Defendants Rogers and McCombs violated the laws and the 4th amendment to the US Constitution requiring  probable cause or a warrant to proceed with the arrest and did not otherwise follow proper police procedure in the discharge of their duties. If the officers had properly served Garry at his front door in a reasonable manner with the restraining order and accompanied Garry and/or waited for Garry in gathering his things for 10 minutes as the officers originally stated, then the entire rest of the incident would not have escalated. As an additional grounds of failure to meet the standard of care, a

DAVID D. LOWELL
ATTORNEY AT LAW
P.O. BOX 1346
BURLINGTON, WA 98233
(360) 755-0111 • FAX (360) 547-6549

reasonable officer knew or should have known that the subsequent arrest lacked any legal basis as well as its extremely physical nature was unlawful. To wit, the subsequent false statements of the officers that sought to claim they ordered Garry to allow them to accompany him into the family home in order to bootstrap the legality of the contact with Garry indicate guilty knowledge of the unlawful contact and arrest. Lastly, the officers write their police reports in a slanted manner to fit their self-created narrative/theme that this was a "barricade situation" and thus Garry posed a risk of serious harm to them. This was a total fabrication.

28. Because McCombs and Rogers were operating or purporting to operate within the course of their duties, the City as *respondeat superior* is also liable for negligence and, as an additional grounds of negligence, for failure in its duties to properly train or supervise the officers in the performance of said routine duties.

29. As a direct and proximate cause of the defendants' failure to meet the standard of care (violations of universal police standards/policies), Plaintiff has been damaged in an amount to be proven at trial.

## VI. Third Cause of Action: Outrage

30. Plaintiff re-alleges as if fully restated all the foregoing allegations.

31. The actions of the defendants, and each of them, did not meet the standard of care for such a routine matter of service of process and was so egregiously below the level of police standards and the extreme, outrageous violence of the subsequent arrest of a disabled senior citizen without legal grounds are shocking to the conscience and outrageous conduct as a matter of law. Garry was also never allowed the 10 minutes he was promised by the officers who arrested him at about the four minute mark of their timer which a reasonable person in Garry's position would expect before forcible arrest. Thus, each officer intentionally acted with extreme and outrageous conduct which caused the plaintiff to suffer severe emotional distress or recklessness as to such consequences.

DAVID D. LOWELL
ATTORNEY AT LAW
P.O. BOX 1346
BURLINGTON, WA 98233
(360) 755-0111 • FAX (360) 547-6549

32. As a direct and proximate result of defendants' outrageous actions, Plaintiff has been damaged in an amount to be proven at trial.

VII. **<u>Fourth Cause of Action: Excessive Force/S. 1983 U.S.C. Violation</u>**

33. Plaintiff re-alleges as if fully restated all the foregoing allegations.
34. The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
35. In addition, 42 U.S. Code, Section 1983 (Civil Rights for deprivation of rights) states "every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . "
36. The defendants Rogers and McCombs have, knowingly and/or under color of law, violated the civil rights of Plaintiff under the 4th amendment by their unlawful arrest without a warrant and, moreover, by highly excessive force. The City, by *respondeat superior,* are also liable because Rogers and McCombs were employees acting or purporting to act within the course of their duties. Garry was clearly told twice that he had ten minutes to gather his things and to make phone calls but only about 4 minutes elapsed when Garry went back in to retrieve his things after requesting clarification on the restraining order.

DAVID D. LOWELL
ATTORNEY AT LAW
P.O. BOX 1346
BURLINGTON, WA 98233
(360) 755-0111 • FAX (360) 547-6549

37. The defendants have intentionally, knowingly and falsely attempted to cover these violations by making subsequent false written statements that Garry was served the restraining order papers and violated a no contact order that was not yet provided to him as well as subsequent oral statements as seen on the bodycams claiming Garry was ordered to only go inside with the officers.

38. By violating Plaintiff's due process and 4th amendment rights in the course of this contact and unlawful arrest, Defendants have proximately caused Plaintiff damages in an amount to be proven at trial.

VIII.  **Fifth Cause of Action:   Unlawful Imprisonment**

39. Plaintiff re-alleges as if fully restated all the foregoing allegations.

40. The defendants Rogers and McCombs unlawfully arrested Garry for a violation of a restraining order that was not yet served, and therefore not in effect, and otherwise lacked probable cause nor had a warrant for his arrest. The City, by *respondeat superior,* are also liable because Rogers and McCombs were employees acting or purporting to act within the course of their duties.

41. The defendants have intentionally, knowingly and falsely attempted to cover these violations by making subsequent false written statements that Garry was served the restraining order papers yet Garry was never given the notice and cannot have violated a no contact order that was not yet provided to him. Defendants McCombs and Rogers also make subsequent false oral statements as seen on the bodycams claiming Garry was ordered to only go inside with the officers. Additionally, the ten minutes had not yet nearly elapsed when Rogers slammed Garry to the ground.

42. Despite the arrest being unlawful and subsequent *mens rea* indicated by the officers' false statements, Defendant was incarcerated for three days.

43. The City, by *respondeat superior,* are also liable because Rogers and McCombs were employees acting or purporting to act within the course of their duties.

44. As a direct and proximate result of such incarceration without legal grounds, Defendants have caused Plaintiff damages in an amount to be proven at trial.

Complaint – page 9

DAVID D. LOWELL
ATTORNEY AT LAW
P.O. BOX 1346
BURLINGTON, WA 98233
(360) 755-0111 • FAX (360) 547-6549

## IX. PRAYER FOR RELIEF

1. For judgment in favor of Plaintiff on all claims: Assault and Battery, Negligence, Outrage, Fourth Amendment violation and Unlawful Imprisonment.
2. For compensatory, special and general damages in respect of each and every claim, in an amount to be determined at trial.
3. For severe emotional distress, including pain and suffering.
4. For punitive damages and statutory damages where available.
5. For reasonable attorney fees and costs; and
6. For such other further and different relief as the nature of the case may require or as may be just, equitable and proper to this Court.

DATED 11/05/20

*David D. Lowell*

David D. Lowell, WSBA No. 22563
Attorney for Plaintiff

Complaint – page 10

DAVID D. LOWELL
ATTORNEY AT LAW
P.O. BOX 1346
BURLINGTON, WA 98233
(360) 755-0111 • FAX (360) 547-6549

CERTIFICATION:

I certify under the perjury laws of the state of Washington that the facts alleged in the foregoing complaint are true and correct.

DATED 11/05/20          _____
                        Garry L. Taylor, Plaintiff

DAVID D. LOWELL
ATTORNEY AT LAW
P.O. BOX 1346
BURLINGTON, WA 98233
(360) 755-0111 • FAX (360) 547-6540